IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

ELIZABETH S. TRIMBLE,

      Plaintiff,

v.                                CASE NO. 2:08-cv-00804

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.


**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the court is Plaintiff's Motion for Summary Judgment.[1]

Plaintiff, Elizabeth Trimble (hereinafter referred to as "Claimant"), filed an application for DIB on December 9, 2004, alleging disability as of January 1, 1990, due to carpal tunnel

---

[1]  The court reminds the parties that pursuant to Local Rule of Civil Procedure 9.4(a), the parties need not file motions.  Instead, Plaintiff should file "a brief in support of the complaint," while Defendant files "a brief in support of the defendant's decision."  Local Rules of the United States District Court for the Southern District of West Virginia, Local Rule of Civil Procedure 9.4(a).

syndrome, hernia, high blood pressure, inflammation in the left leg, back pain and diabetes. (Tr. at 51-54, 88.) The claim was denied initially and upon reconsideration. (Tr. at 40-44, 46-38.) On August 11, 2005, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 49.) A hearing was held on September 27, 2006, before the Honorable Theodore Burock. (Tr. at 411-38.) Judge Burock held a supplemental hearing on January 9, 2007. (Tr. at 439-57.) By decision dated February 21, 2007, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 15-26.) On March 28, 2008, the Appeals Council considered additional evidence offered by the Claimant, but determined it did not provide a basis for changing the ALJ's decision. (Tr. at 5-8.) On June 2, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R.

2

§ 404.1520 (2007).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2007).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this

specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity from her alleged onset on January 1, 1990, through the expiration of her insured status on March 31, 1996. (Tr. at 18.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of upper extremity, back, leg and foot impairments, hernia, diabetes mellitus, obesity and borderline intellectual functioning. (Tr. at 18.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 21.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 22.) As a result, Claimant cannot return to her past relevant work. (Tr. at 25.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as dressing room attendant, school bus monitor, sorter/grader, and garment inspector, which exist in significant numbers in the national economy. (Tr. at 26.) On this basis, benefits were denied. (Tr. at 26.)

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial

4

evidence.    In Blalock v. Richardson, substantial evidence was
defined as

> "evidence which a reasoning mind would accept
> as sufficient to support a particular
> conclusion. It consists of more than a mere
> scintilla of evidence but may be somewhat less
> than a preponderance. If there is evidence to
> justify a refusal to direct a verdict were the
> case before a jury, then there is 'substantial
> evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting
Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)).
Additionally, the Commissioner, not the court, is charged with
resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d
1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not
abdicate their traditional functions; they cannot escape their duty
to scrutinize the record as a whole to determine whether the
conclusions reached are rational." Oppenheim v. Finch, 495 F.2d
396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the
Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was forty-three years old at the time her insured
status expired on March 31, 1996.  (Tr. at 416.)  Claimant
completed the ninth grade.  (Tr. at 422.)  In the past, she worked
as a vehicle assembler for General Motors.  (Tr. at 451-52.)

The Medical Record

The court has reviewed all evidence of record, including the

5

medical evidence of record, and will briefly summarize it below.

Prior to her alleged onset in January of 1990, Claimant was treated for carpal tunnel syndrome and her physician, E.J. Daros, D.O., recommended that Claimant refrain from use of pneumatic tools in her job with General Motors.  (Tr. at 126.)  In 1988, Dr. Daros noted that Claimant had previously had carpal tunnel release surgery and experienced mild phlebitis in her legs.  Claimant also was diagnosed with obesity.  (Tr. at 127.)  In 1989, Claimant was diagnosed with plantar fascitis.  (Tr. at 216.)

The record includes treatment notes from Dr. Daros dated April 5, 1990, through March 29, 1996.  (Tr. at 311-26.)  Claimant was treated for a ventral hernia, irritable bowel, acute cervical, dorsal and lumbar myositis, reflex esophagitis, sliding hiatal hernia, vasospastic disease, probably Reynodes, hypercholesterolemia and phlebitis.

On November 3, 1994, R.J. Cotter, Jr., D.O. examined Claimant related to a possible ventral incisional hernia involving the medial aspect of a cholecystectomy incision.  Claimant was also having bowel and bladder symptoms, which were scheduled to be evaluated.  In addition, Dr. Cotter felt that Claimant's irritable bowel syndrome should be reevaluated.  Once these evaluations occurred, Dr. Cotter indicated that Claimant may need to undergo ventral incisional hernia repair. (Tr. at 242.)

On June 8, 1995, Bradford E. Murphy, D.O. evaluated Claimant

for possible hernia surgery.  Claimant also complained of urge and stress type incontinence.  Dr. Murphy's impression was stress urinary incontinence and urge incontinence.  He recommended urodynamics, Marshall test and cystoscopy.  (Tr. at 298.)

Claimant returned to Dr. Cotter on June 29, 1995, and he noted that at the time he examined Claimant in November of 1994, the medial aspect of Claimant's incision suggested some weakness, although a definite herniation was difficult to determine due to her body habitus.  Claimant's colonoscopy was negative for inflammatory bowel disease.  Cystoscopy showed stress incontinence and a very small cystocele.  An ultrasound of the kidneys showed a probable ovarian cyst on the right, which was asymptomatic.  Dr. Cotter planned to schedule hernia repair.  He also advised Claimant to follow the regimen established by Dr. Daros for improvement of bowel function and elimination of bloating and cramping.  He noted that Claimant had been persistently symptomatic, but also had been routinely noncompliant.  (Tr. at 242.)  Claimant underwent hernia repair on July 10, 1995.  (Tr. at 241.)  Claimant did well postoperatively and on August 10, 1995, Dr. Cotter released her to return to full activity.  (Tr. at 239-40.)

On January 18, 1996, Charles A. King, D.O. noted that chest x-rays showed that the costal cage, cardiovascular markings and pulmonary structures appeared normal.  (Tr. at 333.)  Dr. King further found on March 22, 2006, that x-ray examination of the

lumbar spine failed to reveal evidence of fracture or dislocation. He did note minimal arthritic changes involving the lumbar spine. (Tr. at 332.)

On March 19, 2005, a State agency medical source completed a Physical Residual Functional Capacity Assessment for the period through the expiration of Claimant's insured status on March 31, 1996, and opined that Claimant had no limitations. (Tr. at 262-69.) The medical source noted that "[t]he evidence is insufficient to assess prior to [the date last insured]. She had a ventral hernia repair and a [history of] CTS release prior to that with good results, but she kept on complaining of her arms and hands. No treatment[s] were offered and she was deemed capable to return to work." (Tr. at 269.)

On September 26, 2006, Cynthia L. Hagan, M.A. examined Claimant at the request of her counsel. Claimant reported ongoing psychological problems extending back thirty years. Claimant felt that her depression had progressively worsened throughout the years. On the WAIS-III, Claimant attained a verbal IQ score of 73, a performance IQ score of 77 and a full scale IQ score of 72. (Tr. at 289.) Ms. Hagan diagnosed major depressive disorder, recurrent, severe and generalized anxiety disorder on Axis I and borderline intellectual functioning on Axis II. (Tr. at 292.)

Ms. Hagan also completed a Medical Assessment of Ability to do Work-Related Activities (Mental) on which she rated Claimant's

8

abilities as fair to poor in most categories.  (Tr. at 294-97.)

Claimant submitted to the Appeals Council, a letter from Dr. Daros dated March 14, 2007.  Dr. Daros stated that Claimant was a patient of his from 1984 to 1997 and "to the best of my knowledge she has been totally disabled since April of 1986 through 1996." (Tr. at 410.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in failing to properly evaluate the combined effect of all of Claimant's impairments; (2) the ALJ erred in his pain and credibility analysis; (3) the ALJ erred in analyzing Claimant's mental impairments; and (4) the ALJ failed to give sufficient weight to the opinion of Claimant's treating physician, Dr. Daros. (Pl.'s Br. at 9-12.)

The Commissioner asserts that (1) substantial evidence supports the ALJ's finding that Claimant could perform a limited range of light work prior to the expiration of her insured status; (2) the ALJ's pain analysis is supported by substantial evidence; and (3) Dr. Daros's opinion was entitled to little weight. (Def.'s Br. at 5-8.)

Claimant first argues that the ALJ erred in finding that she could perform minimal work at the light exertional level with limitations and that instead, she should be restricted to sedentary

work in light of her combined impairments.  In particular, Claimant argues that the ALJ failed to consider limitations from her hernia, chronic obstructive pulmonary disease ("COPD"), phlebitis and feet problems. (Pl.'s Br. at  11.)

The social security regulations provide,

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 404.1523 (2007).  Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity.  Id.  The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

The court proposes that the presiding District Judge find that the ALJ's determination that Claimant is capable of light work, reduced by nonexertional limitations, is supported by substantial

evidence and adequately reflects a consideration of the combined
effect of Claimant's impairments.    In his decision, the ALJ
determined that Claimant suffered from the severe impairments of
upper extremity, back, leg and foot impairments, hernia, diabetes
mellitus, obesity and borderline intellectual functioning. (Tr. at
18.)  The ALJ ultimately decreased Claimant's residual functional
capacity to light work, further reduced by a need for routine,
repetitive tasks, no use of torque tools, an inability to climb
ladders, ropes or scaffolds, a need to avoid all exposure to
hazards, a need to avoid concentrated exposure to vibration and a
need to perform work that did not involve constant use of the upper
extremities.  (Tr. at 22.)

     Contrary to Claimant's assertions, the ALJ adequately
considered all of Claimant's impairments, severe and nonsevere
alike, and his findings are supported by substantial evidence.
Regarding Claimant's ventral hernia in particular, the ALJ found
this impairment to be severe, but also accurately observed that
Claimant underwent repair of the ventral hernia and that Claimant
recovered without incident.  (Tr. at 19.)

     Regarding COPD, the ALJ concluded that Claimant's breathing
problems were not severe.  The ALJ acknowledged that on February
29, 1988, prior to onset, Dr. Daros had assessed Claimant as having
COPD with no supporting rationale.  In addition, the ALJ noted that
at this examination, there were no abnormalities in the Claimant's

11

lungs, and x-rays of her chest were normal.  (Tr. at 20, 120, 121.)
The court further notes that Claimant was advised to stop smoking
on more than one occasion.  (Tr. at 128, 309.)

Regarding Claimant's phlebitis, the ALJ found that Claimant
had severe leg impairments, and acknowledged that prior to her
alleged onset, Claimant had leg swelling and had been diagnosed
with mild phlebitis in 1989.  The ALJ further observed that while
Dr. Daros noted in August of 1995, that Claimant had phlebitis
secondary to use of intravenous contrast on her leg for possible
deep vein thrombosis, Claimant underwent a venogram of her left
lower extremity on August 16, 1995, that was normal.  (Tr. at 19,
334.)

Finally, the ALJ found that Claimant had severe foot
impairments because Dr. Daros assessed Claimant as having bilateral
plantar fascitis.  However, the ALJ also found that Dr. Daros
recommended conservative treatment only, including weight loss.
(Tr. at 18.)  The ALJ's decision reflects careful consideration of
all the evidence of record at the second step of the sequential
analysis, in arriving at a residual functional capacity finding and
in posing a question to the vocational expert, and the court
proposes that the presiding District Judge so find.

Claimant next argues that the ALJ failed to make findings
about her pain and in particular, failed to find an objective basis
for her pain.  (Pl.'s Br. at 11.)

12

The court proposes that the presiding District Judge find that the ALJ's pain and credibility findings are consistent with the applicable regulation, case law and social security ruling ("SSR") and are supported by substantial evidence.  20 C.F.R. § 404.1529(b) (2007); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  In his decision, the ALJ found that Claimant had produced evidence of impairments that could reasonably be expected to cause the alleged symptoms.  (Tr. at 22.)  The ALJ's decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain, precipitating and aggravating factors and Claimant's medication.  (Tr. at 22-24.)

The ALJ ultimately concluded that Claimant's complaints of pain and other symptoms were not entirely credible.  The ALJ observed that the objective evidence of record did not support Claimant's testimony of extreme symptoms and limitations. Regarding Claimant's hernia repair and carpal tunnel syndrome, the ALJ observed that Claimant's "testimony of failure of hernia and carpal tunnel surgeries indicates that treatment is a failure, but the claimant did not follow up with treatment for years after these surgeries." (Tr. at 24.)  In addition, the ALJ found that the record reflected no side effects from medications that would preclude performance of jobs identified by the ALJ, and that Claimant greatly minimized her activities of daily living with no

basis in the record for such decreased activities prior to the date last insured. (Tr. at 24.) The ALJ's findings are supported by substantial evidence, and the court proposes that the presiding District Judge so find.

Next, Claimant argues that the ALJ erred in failing to find limitations related to Claimant's mental impairments. (Pl.'s Br. at 11.)

The court proposes that the presiding District Judge find that the ALJ evaluated Claimant's mental impairments in keeping with 20 C.F.R. § 404.1520a (2007), and that his findings are supported substantial evidence. In his decision, the ALJ acknowledged Claimant's testimony regarding depression, anxiety and "spells" (with difficulty remembering things) during the relevant time period. The ALJ observed that Claimant worked assembling cars during the same time period that she alleged having "spells." (Tr. at 21.) The ALJ further observed that Dr. Daros had noted on August 9, 1985, that Claimant had seen a psychologist, but that Dr. Daros made no objective findings. (Tr. at 21.) In April of 1987, Dr. Daros also noted emotional problems secondary to home stressors, and that Claimant had scheduled counseling. Finally, the ALJ observed that in November of 1995, during the relevant time period, Dr. Daros noted that Claimant had experienced emotional distress and that Wellbutrin was prescribed. (Tr. at 21.)

The ALJ concluded that

14

> [t]he objective medical evidence reflects no diagnosis of
> depression, anxiety, or memory problems as alleged by the
> claimant during the time at issue.  A treatment note on
> November 6, 1995, during the time at issue, does reflect
> the claimant experienced emotional distress with no
> supporting rational (Exhibit B-15F-8.)  The claimant
> testified that she had undergone psychiatric treatment by
> Dr. Walker; however, these records could not be obtained
> since Dr. Walker has closed his practice (Exhibit B-18F).
> Notably, during a psychological evaluation at the
> referral of her attorney on September 2, 2006, the
> claimant did not report undergoing mental health
> treatment during the time at issue (Exhibit B-12F).  The
> claimant reported that she had undergone mental health
> treatment 30 years earlier for anxiety and depression
> secondary to marital difficulties (Exhibit B-12F).

(Tr. at 21.)

The ALJ essentially concluded that Claimant's anxiety, depression and "spells" did not rise to the level of a medically determinable mental impairment during the relevant time period, pursuant to § 404.1520a(b)(1), and as such were not severe.  The ALJ properly concluded that Claimant's borderline intellectual functioning, normally a lifelong condition, was severe, and resulted in limitations accounted for in the residual functional capacity finding.  The ALJ's determination that Claimant did not suffer from severe mental impairments, beyond borderline intellectual functioning, during the relevant time period, is supported by substantial evidence, and the court proposes that the presiding District Judge so find.

Finally, Claimant argues that the ALJ erred in the weight afforded the opinion of Claimant's treating physician, Dr. Daros. (Pl.'s Br. at 12.)

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  <u>See</u> 20 C.F.R. § 404.1527(d)(2) (2007).  Thus, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." <u>Ward v. Chater</u>, 924 F. Supp. 53, 55 (W.D. Va. 1996); <u>see also</u>, 20 C.F.R. § 404.1527(d)(2) (2007).

Under § 404.1527(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion.  Section 404.1527(d)(3), (4), and (5) adds the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."   § 404.1527(d)(2).

16

The court proposes that the presiding District Judge find that the ALJ adequately weighed the evidence of record from Dr. Daros and that the Appeals Council did not err in finding that the letter dated March 14, 2007, from Dr. Daros indicating that Claimant was totally disabled did not provide a basis for changing the ALJ's decision.

In his decision, the ALJ adopted the only limitation imposed by Dr. Daros in the evidence before the ALJ at the time, namely an inability to use torque tools. The ALJ complied with the above regulation and case law in evaluating the evidence of record from Dr. Daros, and his findings are supported by substantial evidence.

Regarding the March 14, 2007, letter from Dr. Daros that Claimant submitted to the Appeals Council, once the Appeals Council incorporates the new evidence into the administrative record, this court must consider it in determining whether substantial evidence supported the ALJ's findings. Wilkins v. Secretary, 953 F.2d 93 (4th Cir. 1991). In Wilkins, the Fourth Circuit stated:

> "Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the Secretary's decision is supported by substantial evidence." Huckabee v. Richardson, 468 F.2d 1380, 1381 (4th Cir. 1972); see 42 U.S.C.A. § 405(g). The Appeals Council specifically incorporated Dr. Liu's letter of June 16, 1988 into the administrative record. Thus, we must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings.

Id. Under Wilkins, the court must review the record as a whole, including the new evidence submitted to the Appeals Council, in

17

order to determine whether the ALJ's decision is supported by substantial evidence.

Claimant submitted the letter dated March 14, 2007, to the Appeals Council, and the Appeals Council stated that the information did not provide a basis for changing the ALJ's decision. (Tr. at 6.) Even considering the newly submitted evidence from Dr. Daros, the ALJ's decision is supported by substantial evidence. Dr. Daros does not support his opinion of totally disability, expressed almost ten years after he last examined Claimant, with any objective evidence of record. Moreover, his treatment notes from the relevant time period do not support a finding of total disability.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge DENY the Plaintiff's Motion for Summary Judgment, AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this

court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

_____June 22, 2009_____
Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge